1-8-1437 League of Women Voters of MI v. Ruth Johnson et al. Oral Argument, 15 minutes per side. Mr. Torchinsky for the appellants. You may proceed. Thank you, Your Honor. Jason Torchinsky on behalf of the proposed interveners below. I want to start out and just sort of make sure that the Court understands exactly what the case is on merits below. The case is basically the plaintiffs coming in front of the three-judge panel and saying there are too many Republican congressmen from Michigan. Our clients are eight of the nine Republican congressmen from Michigan. The lawsuit below expressly seeks to reduce the number of Republican congressmen from Michigan. If that doesn't demonstrate our clients' substantial legal interest in the case, we're not sure what else could. The lawsuit literally says there are too many of you and we are representing the you. So we believe that alone is a substantial legal interest. But I want to turn to what I believe our opponents believe is their best argument, which is the inadequate representation standard. OK, before you move on to that, in your reply brief at pages 12 and 13, you cite the Eric Cantor case that came out of Virginia. That was also a redistricting case, is that correct? Yes. And Cantor intervened in that case alleging that he had a substantial interest in the redistricting process, is that correct? Yes, and let me just walk you through the background of that case. Is that correct? Yes. OK, I understand that his intervention was unopposed. Yes. But the other side, therefore, conceded that the congressman had a substantial interest. That is correct. Also, the opinion says that his successor was allowed to substitute into the case because Cantor was in the case in his official capacity as a congressman. Are the congressmen here seeking to intervene in their official capacity, in their individual capacity, or both? I believe that when we, in our intervention papers below, we styled it as in their official capacity. Official capacity. Yes. OK. See, I think that's important because your first interest that you assert is their relationship with their constituents, which I think would be the official position, the official capacity, their relationship. The district judge, the district panel, I should say, said that there is no relationship different for the congressman than people as a whole generalized in that district. Well, I think that's got to be clearly wrong because the congressman represents his constituents, at least in the official capacity. So, all right, I think that might be your best case as to the substantial interest. That's all. And I think that's a hurdle in this case, too. Because I don't really buy the argument that they're going to be financially disadvantaged because they might have to campaign in more districts, that they might lose out on the seats. Those, I think, go to more of the individual damages of these congressmen in their individual capacity as opposed to their official capacity. But as long as you've got one interest that goes to the official capacity, I think you're fine on that prong. Thank you, Your Honor. And I agree. But I want to – let's talk about the – OK. Well, you want to talk about the Cantor case a little bit more? I interrupted you, but that was – I think that's probably the most significant thing about the case. Yes, I would like to talk about that case a little more. So remember what happened in that case. That case was – so they were permitted to intervene in front of the three-judge panel. And, again, it's a three-judge panel case just like this one on direct appeal. When it went up on direct appeal, the reason that the court dismissed it on standing was because the particular congressman whose district was affected was Congressman Forbes. And he had announced he was running in a different district. And in oral argument, his counsel represented that he would run in the old district if it were restored. And ultimately wound up sending a letter to the court after oral argument and said, no, no, no, he's running in the new district that he said he was going to run in, regardless of what the court does here. And it turned out that when they actually redrew the map, Congressman Cantor and then Congressman Bratt's district were ultimately not affected by the redraw at all. So they were – the question was standing post-remedy. In this case, the plaintiffs here below are saying the entire map needs to be redrawn because every one of these districts is essentially gerrymandered to favor Republicans. Therefore, we need to redo the whole map. And that means that every single congressman in the state is going to be affected if they get their remedy. And that's – Does that mean then that every congressman, regardless of party, should be able to intervene? If the congressman wanted to defend the map, yes. I mean we represent eight of the nine congressmen, so one of the Republican congressmen chose not to move to intervene. So we do represent eight of the nine congressmen, not all of them. But what about the other members of Congress who are of a different party, for instance? Would they have a right to intervene as well? I think they would, Your Honor. I mean they have the exact same legal interests as our client. What is the legal interest exactly? Well, we asserted – we've asserted three different legal interests. One, as Judge Griffin points out in our official capacities, the new district boundaries will change relationships between the constituents and their members of Congress. After eight years of being represented in the same congressional district for the – So is that a legal interest of the Congress members or is that a legal interest of the constituents? I think that there is a relationship between the members of Congress and their constituents. So – but also, Your Honor, I'll point out in redistricting and election cases, political parties and candidates have often been allowed to intervene because of the interests of their voters. I mean I guess what I'm – I guess one of the others are – What about the interests of the voters already represented? By who? By the plaintiffs on the one hand and the defendant on the other hand. For a couple reasons. One, the Secretary of State's role here is to essentially administer the election map. The exact contours of the district lines don't affect the Secretary directly. The Secretary is going to administer whatever map comes out of this court process or legislative remand for a new map. The members of Congress who used to represent, let's say, one part of the state, now suddenly live in a district that is a wholly different part of the state. The interests of the congressman and the interests of the state government defendant who is charged with enforcing or who is the chief elections officer vary dramatically because the exact contours of the map don't matter to the Secretary in her official capacity. I was a little perplexed by that. I would think the attorney general would be defending the state of Michigan and the redistricting rather than the Secretary of State just for that very reason. The attorney general is usually the one in charge with defending the laws. Your Honor, I think that gets to the point of the strategic nature of who the plaintiffs sued and why they sued who they sued. In a lot of these cases, you'll see plaintiffs sue the state, the attorney general, the legislature. In this particular case, they sued the term limited secretary only. They did not sue the state of Michigan. They did not sue the governor. They did not sue the attorney general. They know that no matter what the outcome of the election is this November, the current secretary is term limited, and there will be a new secretary in January who will be the secretary when the case goes to trial. What's the Secretary of State's position with regard to this intervention? The Secretary of State supported our intervention. So there's no opposition at all? No opposition from the secretary to the intervention, no, Your Honor. But again, Your Honor— The plaintiffs are objecting. The plaintiffs are objecting, and the district court, in their very cursory opinion, concluded that we didn't have a right to intervene. Your Honor, I think if you look back at the history of redistricting cases, redistricting are one of the cases where intervention is often found, and particularly in the Sixth Circuit, which has been generally forgiving to people seeking to intervene, even when there are state government defendants, like, for example, Crutter v. Bollinger, where a group of students sought to intervene to defend the University of Michigan's Affirmative Action Program. Those students who had a prospective interest in potentially applying were found to have a substantial and protectable legal interest that differed from the University of Michigan. In the Michigan State AFL-CIO v. Miller case, this court also applied a very relaxed standard to granting intervention and allowed the Chamber of Commerce to intervene. The Chamber of Commerce was not actually directly regulated by the campaign finance law that was at issue there. Obviously, in a competitive environment, it mattered. But in that case, even though there was a governmental defendant, the State Chamber of Commerce was permitted to intervene. This circuit, in particular, has been very forgiving to people seeking to intervene and very generous in allowing intervention. Was that a permissive intervention or as of a right? Those were as-of-right intervention cases, Your Honor. As to the permissive intervention, the three-judge panel's rationale for denying permissive intervention was that intervention would unduly delay the case and then prejudice the plaintiffs. How? I don't know, Your Honor. I mean, I can't see how there would be a delay. You'd have one other attorney, and under the plaintiff's theory, they have the same defenses. They are exactly the same. So the fact that you have two attorneys presenting the same defenses, I don't see how that would delay anything and then how there'd be any prejudice from the same defenses being raised. I mean, I'll have to ask the other side about it, but I don't see any credence to that ruling. And if there's no credence to it, then I think it might be an abuse of discretion. I agree, Your Honor, and that's why we're here. So let's pursue, then, the idea of delay. You said that your defenses were going to be the same as the Secretary. No, Your Honor. I thought you just said that, just a moment. I actually asked the question. The other side says your defenses are, but they're not. You bring latches for defense, which I think is probably a very meritorious defense since they've allowed three election cycles. Four to go through already, but it's not even raised. It's probably waived. Let me ask you directly the question. Are your defenses going to be different than the defenses that the Secretary has been raising? I believe that our defenses would be, yes. I believe that our defenses would be different. Can you be precise, then, as to how your defenses would be different? Because I think you can dig yourself into a hole either way you answer this question. And so we want you to tell us so that we know which hole you choose to be in. Thank you, Your Honor. I think, first of all, I would like to point out in their opposition brief here, the plaintiffs below point out that the Secretary alleged some of the additional defenses that we alleged in our motion to dismiss that was attached to our motion to intervene. But I would point out to you that the Secretary added some of those in their answer  So whether the Secretary would have done that but for our proposed intervention, I don't know. The basic problem, and you haven't really answered my question yet, but the basic problem is if you are raising different defenses, then you open yourself up to the idea that this is going to delay things. And if you're raising the same defenses, then why isn't there adequate representation? Okay, let me see if I can address those. I think that some of the defenses that we would raise are ones that the court is going to be required to address, ones that the court is going to be required to address. For example, the Supreme Court about two months ago decided on a 9-0, the Whitford v. Gill case. The Secretary hasn't yet brought that case to the attention of the panel below, and that case has been out there for about two months and may be ultimately definitive in the merits of the case. Latches, for example, was brought up as an affirmative defense but wasn't urged initially as part of the motion to dismiss. By who, the Secretary of State? By the Secretary. Okay, so it is preserved anyway. The justiciability of the First Amendment claim that they're bringing was not raised at the motion for summary judgment. I don't recall whether it was included in one of their affirmative defenses, but I think there are a number of ways that the You want to intervene to make sure the Secretary of State does raise all these defenses. That's right, Your Honor, and should there be any change in the Well, there will be a change in the Secretary of State come January. We would want to also be able to preserve our right to appeal because here's the problem. In some of the cases where people have intervened in redistricting cases sort of after judgment on merits but before a remedy, the courts have found that to be untimely. So we're sort of in this, you know, you're sort of in a problem if you do and you're in a problem if you don't because if you don't intervene, if you intervene too early, the other side says, Oh, you're too early. The state's got your back. And then if you intervene, you know, if you come in at the remedy phase, then the other side says, Oh, you're too late because the liability has already been decided. So we were sort of in a catch-22, and that's why we decided intervening early was the best route. Thank you. And I have three minutes for sure. I've got some more questions for you. Regarding the inadequate representation requirement, the Miller case says the following. This burden is minimal because it is sufficient that the movement prove that the representation may be inadequate. One is not required to show that the representation will be, in fact, inadequate. All right. Miller cases may be inadequate, but we have other case law that says you cannot consider future events, that what you do is you look at the representation now as opposed to speculating as to the future. Is there a conflict between those authorities? Well, Your Honor, there is a little bit, but in this particular case, I think there's a difference between speculation and things that you know for sure will happen. In this particular case, Secretary Johnson is term-limited. She cannot run again. We don't know who the Secretary of State will be after January 1st. The Democratic candidate already is sympathetic to the plaintiff's position. We know that. That is correct. We don't know who the Republican candidate will be because the convention hasn't taken place. I believe the primary is next week. I don't think Secretary of State is on the primary ballot. I think it's decided by the state convention. You probably know better than I do after your time in Michigan. Do you know if there are more than one candidate? I believe there is. I'm not sure that the Republican Party has a senior candidate. Do we know their positions? I do not, Your Honor. But my point is there will be a different person there come January. And that different person, I mean, particularly if it's a Democrat, probably will choose not to defend the suit. And, Your Honor, I think we pointed out in our briefing there is a— We don't know. One of the Republicans may choose not to defend the— I mean, Your Honor— That's the way the Republican Party is split now in Michigan. You've got the Snyder wing and you've got the Trump wing. Your Honor, you know more about the politics of Michigan than I do. I'm from Michigan. I understand. And there's the question, of course, whether you had pointed out or someone had pointed out, perhaps it was Judge Griffin, that the attorney general is another entity that could be interested in defending a state law. That's correct, Your Honor, and the attorney general is not in the case. The attorney general was not named as a defendant. The attorney general position is going to turn over too. And the attorney general did not seek to— Did the attorney general seek to intervene? No, Your Honor. And did your clients request that the attorney general— I'm not from Michigan. I do not know facts outside the record. Is the attorney general currently a Republican? The attorney general is a Republican. The attorney general is running for governor and is also term-limited as attorney general. So there will be a new attorney general come January as well in the state of Michigan. Okay. We have taken you way beyond your time, so thank you. May I just make one last— You have your rebuttal, three minutes. Okay. If you want to use it, you may. I'll wait. Thank you, Your Honor. May it please the Court, Ryan Hurley for the Voter Appalese. There really isn't any question here that the Secretary of State is vigorously defending this lawsuit. And that really is an overarching reason why this court should affirm the decision below. We've seen in the record that the defenses that the appellants claim the Secretary isn't pursuing are being pursued. The Secretary has raised the laches defense. The Secretary moved to dismiss and was successful in part. The Secretary has denied justiciability. There's no question here that— If that's all true, how do you justify the ruling by the three-judge panel on the permissive intervention motion where they said they denied it on the basis that intervention would unduly delay the case and prejudice the plaintiffs? How would there be delay and prejudice? Sure, Your Honor. Of course, we're here on abuse of discretion. I must note that. Sure. We find abuse of discretion. I mean, discretionary rulings are appealable. Understood, Your Honor. Undue delay and prejudice, I think that's evident from the record as well. The appellants have indicated they already want to readdress issues that the court has raised. That will inject delay. They want to readdress standing. Okay. They timely filed their motion to intervene, and then it was denied before the three-judge panel ruled on the motion to dismiss. Isn't that the scenario? That is true, Your Honor. Okay, so there was no—at the time, the three-judge panel denied the motion, and there would be no possibility of delay or prejudice, I don't think. There was no ruling at that point on the merits. On that particular issue, perhaps so, but I think we have an experienced three-judge bench who is very familiar with this type of protracted litigation. The cases are very clear that these are— All right, that's generalized. I mean, tell me specifically how there would be prejudice and delay if they intervened. The addition of parties is going to inject additional discovery. You have one more attorney. If they have the same defenses, like you say, I can't see another attorney really causing that much delay or problem. Well, Your Honor, discovery closes in three weeks. Well, okay, that was also—that was set after the three-judge panel denied this motion to intervene, and if that's wrong, it's going to have to be changed, I think. I mean, you can't justify the ruling by subsequent actions that the three-judge panel took. I'm looking at the time they denied the intervention. Was it an abuse of discretion? It appears to me like it probably was because what they said, I can't find a justifiable reason for either delay or prejudice. And if you can come up with one, I'm willing to hear it. Your Honor, we know that this is on a very tight timeline as it is— It doesn't have to be. They've allowed three election cycles to go through. They're going to allow the fourth in 2018. This would only affect 2020. That would actually only be one election cycle because there's going to be a census taken in 2020, and they'll be redistricting either by the legislature or by this commission that's going to be on the ballot now in November. So it would only be for one election anyway, so I don't see the rush to do this. Well, Your Honor, we've requested relief before the 2020 election. The court has put this case on a path to ensure there's a result before that election, and I think this court, exercising its discretion, foresaw that the addition of eight additional parties would inject delay and prejudice into the case, and they did not use their discretion. I don't want to turn to the same arguments for the eight congressmen. All right, you want to talk about intervention of right, and why don't the congressmen in their official capacity have an interest in their representation of their constituents? I mean, that's what they're elected for, to be representatives in Washington for the people in the first congressional district, the second, whatever. And why would not changing the shape of the district affect that relationship between the congressman in his official capacity and the constituents that currently live there? Well, Your Honor, I think the Cantor case that you identified previously actually cuts in our favor. The initial intervention was not contested. They conceded that Cantor had a substantial interest. That's the first prong. So there it was not contested that a congressman in his official capacity has a substantial interest in his constituents. So, I mean, I think that helps the congressman here. And the Cantor thing was about the substitution, and also that the Secretary of State refused to defend or something at that point. I mean, I think there was a change as well. But they also said because Cantor was in the case in his official capacity, that his successor in his official capacity could continue the litigation, which I think is important as well. And the Supreme Court found that they didn't have standing because they didn't demonstrate any harm to those interests. That's a different issue of whether you have a substantial interest. You can have a substantial interest without having standing, can't you? I think that's fair, but I think to the extent we can glean anything of meaning from that case, and the appellants suggest that standing and intervention interests are similar, the Supreme Court said, Congresspersons, you haven't demonstrated any harm. There's no record here to demonstrate that this is true, and rejected their argument that they did have standing. I think if we're going to draw analogies to standing cases, that case actually suggests similarly here that these congressmen who haven't put anything in the record about their harm, about the investment they'll make in their reelection attempts, that there similarly is no record here to demonstrate that harm, even if we draw similarities from these standing inquiries. Suppose that the record did have some indication of the congressmen feeling that they had invested a lot in their particular districts. Would that be enough to establish a legal interest that would warrant intervention of right? Your Honor, I don't think under this Court's precedent it would. address the record issue, but the appellants point to the Miller case where this Court said it was a close call. There you had the Chamber of Commerce participating in the legislative process that led to the act that was being challenged. There was a record of continued opposition to these kinds of issues, and regulation on three of the four provisions that were being challenged, and this Court said there it was a very close call as to whether the Chamber had a substantial legal interest. Here these appellants are much more removed than the Chamber was in Miller. These Republican congresspersons were not involved in the legislative process. The Michigan legislature was. Do these congressmen, and I think they're all men, do they have a significant legal interest that needs to be protected? I'm having trouble articulating what that significant legal interest is, but I'm wondering how you would rebut the statement of your opponents that they do have a significant legal interest, and apparently the focus is entirely on their suit in their official capacity. Yeah, and I think, Your Honor, I'm struggling as well, because we don't have any authority that has recognized the type of interest they're advancing as being a significant legal interest for purposes of intervention. So what about the idea that they're protecting their constituents in some way? I think, Your Honor, that to the extent that's an interest that the Secretary of State is protecting, which goes back, understandably, to the adequacy of representation, but I do want to focus there because I think that this Court need not even reach the substantial legal interest question. What happens if the new Secretary of State decides not to defend this? Then they would have a legal interest, and you would be further delayed than you are now, right? Well, Your Honor, I think that's a fair question, and certainly in the event there is a Secretary, whether it be Democrat or Republican, who chooses not to mount the vigorous defense that the Secretary is currently mounting, we would certainly acknowledge that the adequacy of representation issue at that time, and under this Court's precedent, we look at adequacy now, not in the future. But if that happens, then I think the district court would look at that issue, and I think there would be a much stronger case at that time to have someone else take over the defense. I'm pretty sure it would delay it past 2020, wouldn't it? Not necessarily, Your Honor. There's no reason why the law firm that's current, it's an outside law firm representing the Secretary of State. They're involved in all this non-party discovery. They're representing witnesses as well. There's no reason why, whether it be in the Attorney General or the Michigan Legislature, there's no reason why any of those bodies couldn't maintain the defense that the Secretary is currently mounting and keep this case on track for resolution at a trial in early 2019 and then whatever appellate proceedings happen thereafter so that there's finality. Then it would go to the Supreme Court, right? Straight out of the district court. If the adjudication on the merits, Your Honor, the statute provides a direct appeal to the United States Supreme Court. What's your best case from the Supreme Court that they would take any action in this case? I don't know, Your Honor, what the Supreme Court will or won't do. There aren't many good cases on that. They don't jump into the gerrymandering case unless it's involved in racial discrimination or something like that. Well, I think, you know, I can't speculate as to what the Supreme Court will or will not take on. Isn't it mandatory jurisdiction in the Supreme Court? They have to take the merits decision of this three-judge district court under 1253. So whichever way the three-judge district court decides, there's mandatory appellate jurisdiction in the Supreme Court. All right. Mr. Hurley, I think your argument that if after January 1st the new Secretary of State does not defend, then the congressman would have a more meritorious argument of inadequate representation, I think really undercuts your case because I think under permissive intervention, we look to the efficient administration of justice in the case. And to me, allowing them to intervene at this point would be more efficient for the administration of justice, and otherwise you're going to have to redo all this discovery, all the depositions that were taken from now through January 1st, and allowing them to intervene now would keep the case from being delayed. I would think it would be in your interest to allow them to intervene now rather than in January and have the case move along, and I'm kind of surprised that you're opposing this since the net effect, I think, is going to be to further delay your case, and I really don't think it's in your interest. I don't think it's in the court's interest not to allow them to intervene. When you just admitted that January 1st, if what happens, which I think is a very realist possibility in Michigan, the Democratic candidate who is sympathetic to the plaintiffs gets in there, she will not defend, well, you're going to redo the whole thing. So I think as to permissive intervention, why are you opposing it? Your Honor, to be clear, I'm not suggesting that these appellants would be the proper parties to intervene in the event. I think they would be. I think if it came back to me, I would say it's for sure inadequate at that point, and I think the case would come back to this panel, by the way, if January 1st they file a second motion to intervene and it's denied, it's going to come back to us, and at least for me, I think they would be allowed to intervene at that point. But to let you answer your point, why do you think these would not be the proper parties to intervene if hypothetically the election occurs and if hypothetically the Democrat wins and if hypothetically she or he, whoever it is, decides to go along with the plaintiff's lawsuit here? Yes, Your Honor. I just think going back to Miller, we would have entities, whether it be the Michigan Legislature or an Attorney General in his or her official capacity who would be either closer to and have a more direct interest akin to the Chamber of Commerce in Miller. The Michigan Legislature obviously participated in the passing of this law, or the Attorney General of Michigan who has a similar duty, like the Secretary of State, to protect and uphold Michigan laws. As opposed to the highly personal interest of an individual or eight individual Michigan congressmen who want to keep their particular job in Congress. Yes, Your Honor. I think to sum it up, just so I'm clear, we don't speculate, and this Court's jurisprudence does not speculate and appoint backup defendants based on contingencies that may or may not happen. We aren't there. The Secretary of State is mounting a vigorous defense. That in and of itself is an adequate basis under intervention as a right and permissive intervention to affirm the decision below. In the event these contingencies materialize, then we'll look at those issues then, but we don't, under Rule 24, appoint backup defendants just in case something might happen months or years later. So we'd respectfully ask the Court to affirm the decision below. Thank you. Your Honor, just a couple of points on rebuttal. We believe that in the interest of judicial economy, having us in the case at this stage makes most sense for exactly the reasons that I just pointed out. We're in a catch-22. If we wait until January and find out that there's a Secretary of State of a different party who abandons defense of the map, then we're going to have timely issues raised. And to the extent that my colleague just stood up here and suggested that the Michigan legislature could intervene, there's actually a motion pending from the Speaker of the House to intervene that they've opposed below. It was filed after this intervention was denied, but they came out and said they shouldn't be allowed to intervene. The Secretary of State's lawyer came in and said the Speaker of the House should be permitted to intervene because I, as the lawyer for the Secretary, I don't know if I'm going to be continuing in this case in January. I don't know if there's a new Republican Secretary. I don't know if I'll stay. I don't know if there's a new Democrat Secretary, if I'll stay. Even the lawyer for the Secretary of State recently told the district court, I don't know if I'm going to be here in January. Has that been ruled on in the three-judge district court? No, it's pending. And it's a motion from the Michigan Speaker of the House? It's the Speaker of the House and the Chairman of the Elections Commission or the Elections Committee. Is that two different people then? Two different people. But those people might change with the elections too, right? That is true as well. So we don't know really who will be the Michigan Speaker of the House? That is true. In the 2018 election. There's a lot of unknowns in these kinds of cases. And, Your Honors, I would like to point you to the Abbott v. Perez case that was just decided by the Supreme Court. It was a Section 2 case, not a political gerrymandering case. But in that case, there was congressional intervention as defendants. Republican congressmen who liked the map intervened. And so there's lots of cases. Was it opposed in that case? Do you know? I don't believe it was opposed in that case. So it was conceded they had a substantial interest in their official capacity, which is the Cantor case? Yes. I mean, Cantor wasn't opposed either. To me, that shows that everybody knew that Cantor, in his official capacity, had a substantial interest. Is it necessarily a concession or is it more of a litigation decision not to oppose? Do we know that there was an actual affirmative concession in either Cantor or this Abbott v. Perez? I believe in the Whitman, which was the Cantor case, I believe it was unopposed. I do not recall. The docket in the Texas case is about 4,000 entries. So you're saying it was unopposed as opposed to a concession? I don't know, Your Honor. You just used the word unopposed when I asked you to distinguish between unopposed and concession. I'm sorry, Your Honor. They were allowed to intervene. I don't recall from the 4,000-entry docket. Yes, but you have been saying conceded a lot, and now you're saying unopposed. It's a matter of fact that one can find out by reading the opinion carefully out. That's true, Your Honor. I'd like to also point the Court to a couple of other cases where intervention allowing other parties to intervene as defendants has been permitted. There was an Eleventh Circuit case from 1993 called Meek v. Metropolitan Dade County, 985 F. 2nd, 1471. There was a three-judge panel case from 1992 called Nash v. Blunt. It's reported at 140 FRD 400. In that case, the Court actually said, quote, it is the normal practice in reapportionment cases to allow intervention of voters, party officials, and the like, supporting the position that could theoretically be represented by public officials. And the Nash v. Blunt case in particular... Was that a ruling on it, or was that just dictated? No, that was a ruling. That was a ruling on the intervention. Okay. Can you give me that cite again? Yes, Your Honor. It's 140 FRD 400, Western District of Missouri, 1992. And that was a three-judge panel case that was summarily affirmed by the U.S. Supreme Court at 507 U.S. 1015 in 1993. There was some kind of settlement agreement, and different parties sought to intervene. And if you look at that case in particular, it cites a couple of other cases where intervention as defendants was granted. And the Court basically said it's uncontroversial in redistricting cases to allow various parties with differing interests to intervene as defendants in redistricting cases. And when the various parties were mentioned, were members of Congress listed among the various parties? I believe Nash was a state legislative redistricting case. I don't believe it was a congressional case. But I don't know that the type of district matters for this Court, whether it's a congressional district versus a state legislative district in terms of intervention. All right. If we were to reverse and allow you to intervene, would discovery have to be redone? Has discovery actually occurred? I know it's allowed right now to the end of August, but has it actually taken place? Your Honor, I've been monitoring the docket. Some discovery has taken place. There are motions to compel pending from various sides, various parties, various non-parties, motions to quash pending from various non-parties. So we are literally right now in the middle of the throes of discovery. There's a reason that we asked this Court to expedite in April, and we did everything we could to stay on schedule. We didn't ask this Court for a motion to stay pending appeal, which I think we could have done and has been granted in other redistricting cases. So we've done everything we could to stay on the schedule or to try to stay on the schedule that the district court has set out, and we would do our best to do everything we could to comply with the current schedule if our intervention was timely granted. Okay. I mean, this is a difficult case, and I think our panel will try to get an opinion out promptly, but I can't guarantee it will be released in a week or two. That's one reason I'm asking, that's all. Did you ask for a motion to stay in the district court? We did not, Your Honor. Again, we were trying to keep this case moving forward like the district court said, like the plaintiff said, and we were trying to not create an undue delay through our intervention, and that's part of the reason that we chose not to ask the district court for a stay and not to ask this Court for a stay. Thank you. Thank you, Your Honor. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?